UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

UNITED STATES OF AMERICA,

    *Plaintiff,*

    v.                                                           Case No. 25-CR-0089-LA

HANNAH C. DUGAN,

    *Defendant.*

_____

**DEFENDANT'S RESPONSE TO GOVERNMENT'S
CONSOLIDATED MOTIONS IN LIMINE**

_____

### I. INTRODUCTION

At the time Eduardo Flores-Ruiz left Judge Dugan's courtroom and entered the hallway, federal agents seem to have reconsidered the plan to arrest him in the courthouse. That contradicts the indictment. This case concerns events that happened in a very short time, less than ten minutes. The context of what led up to those 10 minutes, particularly in the courthouse in the days prior, and what *actually* happened during those ten minutes will be central to the trial. Judge Dugan cannot mount a defense if she cannot show the jury what happened. The government, through its motions *in limine*, seeks to prohibit Judge Dugan from doing so.*

---

\* After Flores-Ruiz emerged into the public hallway 11 feet and 10 inches to the right of the courtroom door, the two agents in the hallway saw him. As explained below on page 7, those two agents did not arrest Flores-Ruiz but instead followed him to the elevator; one rode down with him; and agents then followed him outside where they arrested him on a public street. The entire difference here was Flores-Ruiz emerging less than 12 feet from where the agents expected him, in the same hallway and in full view of two agents just as he would have had he used the courtroom door.

Before April 18, 2025, the day Flores-Ruiz was arrested outside of the courthouse, Immigration and Customs Enforcement agents had made two prior arrests in the Milwaukee County Courthouse. In response to those arrests, Chief Judge Carl Ashley alerted the other judges that arrests were happening, issued a press release condemning the arrests, and circulated draft policies advising judges and court staff how they should respond to ICE arrests going forward. Specifically:

- On April 3, Chief Judge Ashley sent an email with the subject line, "ICE Taking People into Custody in the Public Hallways in the Courthouse Complex." Bates 001132. (Throughout here, Judge Dugan uses the Bates numbers that the government provided).

- On April 6, he sent an email with the subject line, "RE: Press Release Regarding Immigration and Customs Enforcement (ICE) agents detaining individuals within the Milwaukee Courthouse Complex." Bates 002448-002449.

- On April 9, he sent an email circulating a draft ICE Policy. Bates 002284-002287.

- On April 10, he sent an email circulating a revised draft of the ICE Policy. Bates 001390-001394.

In the April 6 email, which was circulated to all Milwaukee County judges, Chief Judge Ashley wrote that the arrests were having a "chilling effect" and that "[c]ourts must remain safe havens" from threats of immigration enforcement. Bates 002449.

Then, in his April 9 email, Chief Judge Ashley's draft policy required court personnel

to "promptly refer" ICE agents to an immediate supervisor. Bates 002286. The supervising judge, in turn, was required to notify either Chief Judge Ashley or the Court Administrator of "any" ICE activity in the courthouse. *Id.*

In the April 10 revised draft policy, Chief Judge Ashley required that he or the Court Administrator be given notice before an ICE agent makes an arrest. Bates 001393. Further, he required ICE agents to certify they were following ICE protocols and to identify themselves. *Id.*

Before Chief Judge Ashley's emails, the judges had been emailing about peer-to-peer training for judges on ICE enforcement. Although Judge Dugan could not attend the training, two other judges assured her and the other judges that they would share "any ideas this generates to the Chief." One of those judges, Judge Perez, after the training, wrote in an email on April 4 to the judges that "ICE can legally conduct enforcement (ie, take people into custody) in public areas of the courthouse." Bates 001149. Judge Perez's email also contained a PowerPoint presentation that would partially form the basis of Chief Judge Ashley's draft policy. But the PowerPoint presentation had a slide saying, "ICE Policy requires that civil immigration enforcement activities . . . will take place in non-public areas of the courthouse." Note, already, the tension here. Where were ICE arrests supposed to take place: In public areas or in nonpublic areas? Which places are public areas and which are not? The judges needed guidance.

On April 8, Judge Dugan sent an email thanking Chief Judge Ashley and Judge Perez, and requesting that protocols be enacted. *See* ECF 56 at 6. As to Count 2, the government is alleging that Judge Dugan acted with corrupt intent. This April 8 email is the

3

clearest evidence of Judge Dugan's state of mind in April regarding ICE arrests:

> Good morning,
>
> Thanks for the information about incidents and concerns about ICE in the courthouse. And thanks to Laura G-P for her information and to CJ Ashley for the public statement.
>
> In the various emails state arrests in the courthouse have been discussed as different, but even they have qualifications and (at least under stood and informal if not required) protocols. The ICE detentions are a different animal—and currently the historic protocols are now shifting quickly.
>
> I have seen in my court more people not showing up for court dates. I have had two immigration attorneys asking me just today about what protocols are in place.
>
> I'm suggesting that a judges' meeting be called with corporation counsel as soon as possible.
>
> It would be helpful to me and I hope other judges – and by extension to the public and other county staff and electeds - to have a discussion with each other about the outstanding issues, identify the concerns to be addressed, and develop a consistent set of protocols to be implemented and followed in the Milwaukee circuit courts.
>
> Optimally, it would be great to have at least a draft of written protocols for the Safety Building, the Courthouse and for Children's Court. We are in some uncharted waters with some very serious and even potentially tragic community interests at risk in the balance. Given the effects on the justice system, all the parties, witnesses, jurors, litigants and the individual cases each of us hears it would be helpful to be clear on the new parameters within which we are to work and which a fair and efficient justice system can operate.
>
> Hannah Dugan
>
> P.S. having asked for this, FYI that about 8 of us are going to be at judicial ed from tonight until Friday at noon in Door County. I am willing to meet on the weekend if necessary.

Bates 001725. So, Judge Dugan was aware that the protocol was in rapid flux, had lawyers asking her what the rules were, and wanted to have a discussion about issues that this indictment embraces. She was trying to ascertain, and follow, the rules.

The PowerPoint presentation sent to both Chief Judge Ashley and Judge Dugan had a slide saying that "ICE Policy requires that civil immigration enforcement activities . . . will take place in non-public areas of the courthouse." On April 10, Chief Judge Ashley circulated a draft policy that required agents to certify that they have followed their agency protocols prior to making any arrests. Bates 001393. Chief Judge Ashley's draft policies differentiated between administrative and judicial warrants, prohibited ICE from executing administrative warrants in nonpublic areas by prohibiting court personnel from allowing

4

Case 2:25-cr-00089-LA    Filed 11/14/25    Page 4 of 14    Document 65

ICE agents to enter nonpublic areas of the courthouse. Bates 001393-001394.

Chief Judge Ashley's draft policy, borrowing heavily from the PowerPoint slides, also said:

> Court personnel may not authorize the entry of immigration agency personnel into the nonpublic areas of any Court facility; and must promptly refer immigration agency personnel to their immediate supervisor or manager. If an immigration agency officer insists on access to a non-public area, the employee should not resist but should say, "I do not consent, but because I have no other choice at this time, I will not interfere with your order" and immediately contact their supervisor about the officer's order, prepare a written statement about the encounter, and submit it to their supervisor.

Bates 001393.

The government indicted Judge Dugan for "falsely" telling ICE agents they needed a judicial warrant. But if both Chief Judge Ashley and Judge Dugan were informed that ICE policy requires arrests to take place in nonpublic places of the courthouse, and Chief Judge Ashley's policy prohibits ICE from executing administrative warrants in nonpublic places of the courthouse, then indeed, the only viable option for ICE arrests in the courthouse that comply with both ICE policy and Chief Judge Ashley's policy, was for ICE agent to have a judicial arrest warrant, which according to Chief Judge Ashley's policy "allows an immigration enforcement officer to enter into a nonpublic place (if necessary) to arrest a person named in the warrant." Bates 001394.

Chief Judge Ashley's April 10 email circulated an updated draft policy. In the new draft, court personnel were required to refer ICE agents to the Chief Judge or the Court Administrator. The indictment alleges Judge Dugan obstructed a proceeding by telling ICE agents to "go to the Chief Judge's office," even though that's what Chief Judge Ashley's policies required.

5
Case 2:25-cr-00089-LA    Filed 11/14/25    Page 5 of 14    Document 65

  

*Compare* ECF 56 at 7 *to* Bates 001393.

> Court personal may not authorize the entry of immigration agency personnel into the nonpublic areas of any Court facility, and must promptly refer immigration agency personnel to their immediate supervisor or manager. If an immigration enforcement officer insists on access to a non-public area, the employee

On April 18, when—according to the draft policy—the ICE agents arrived in Chief Judge Ashley's office, they, along with the Court Administrator, had a phone call with the Chief Judge. That call lasted eight minutes. During that call, agents asked Chief Judge Ashley whether they had permission to make an arrest in a public hallway or a courtroom, and Chief Judge Ashley declined to give them permission because he wanted to work out an agreement with ICE. He also declined to explain what areas were public and what areas were not:

> Wisconsin sub-office (AFOD) Cassandra Kubiszewski. DO Vasconcellos then asked Chief Judge Ashley if ICE/ERO was currently allowed to be in the public hallways of the Milwaukee County Courthouse to affect administrative immigration arrests. Chief Judge Ashley stated that he wanted to work that out via the policy he was going to send to ICE/ERO Milwaukee. DO Vasconcellos then asked Chief Judge Ashley if ICE/ERO was prohibited from being in the designated public areas of the facility as of April 18, 2025. Chief Judge Ashley stated that ICE/ERO personnel were prohibited from entering "designated private areas like the court room". DO Vasconcellos asked Chief Judge Ashley if he would be able to explain to him the delineation between the "private court room" and the public hallway or if the Chief Judge had also designated the public hallways as "private areas". Chief Judge Ashley reiterated that such designations would have to be conclude via an agreed upon policy between the Milwaukee County Circuit Courts and ICE/ERO Milwaukee. DO Vasconcellos stated that he understood and terminated the phone call. DO Vasconcellos and TFO Zuraw then exited

When the agents saw Flores-Ruiz exit into the public hallway, they texted the supervising agent who was in Chief Judge Ashley's chambers:

- "Our guy's heading out now."
- "With his attorney."

The supervising agent responded, not by telling them to arrest him, but by telling them to follow Flores-Ruiz:

- "Follow him, please."
- "Follow him."

Yet the indictment alleges that the ICE agents planned to arrest Flores-Ruiz in the public hallway. But again, that plan seems to have shifted. Instead, the agents followed Flores-Ruiz down the elevator and out of the courthouse to arrest him outside on a public street.

The government now seeks to exclude evidence that proves this crucial context and demonstrates what Judge Dugan understood she was required to do. More, the government seeks to exclude evidence showing that Judge Dugan had no corrupt intent, an element of one of the offenses she's charged with, to disrupt the agents. She asked for guidance, received it, and followed it. And her actions demonstrate that she had no corrupt motive, as Count 2 requires the government to prove beyond a reasonable doubt—so also necessarily allows Judge Dugan to dispute.

## II. RESPONSE

Judge Dugan responds now to each of the government's motions *in limine*.

***1. Motion to preclude defendant from mentioning potential punishment or any collateral consequences flowing from conviction.***

Judge Dugan does not object.

*2. Motion to prohibit defendant from presenting evidence, argument, or remarks designed to induce jury nullification, including, but not limited to appeals for the jury to decide the case based on their personal views of immigration policy and enforcement.*

Judge Dugan does not object to the government's request to prohibit her from arguing for jury nullification or appealing to jurors to decide the case based on their personal views of immigration policy and enforcement.

But Judge Dugan intends to present evidence and make arguments designed to persuade the jury to find her not guilty, just as the government will present evidence and make arguments designed to persuade the jury to find her guilty.

It's unclear what evidence inducing jury nullification would be, or why the Court would admit that evidence if it had no proper evidentiary purpose. Judge Dugan requests that the government clarify what evidence it is concerned about.

*3. Motion to bar discovery requests or commentary regarding discovery in the presence of the jury.*

Judge Dugan is not opposed to the general idea of not arguing discovery disputes in front of the jury. Obviously, however, both parties will be commenting on discovery throughout the trial. For example, a question, answer, or comment during trial that a document was produced by the government is proper and necessary, as may be the timing of that production.

*4. Motion to bar defendant from defining reasonable doubt.*

Judge Dugan has no objection to this motion. She will follow the Seventh Circuit's decision in *United States v. Alex Janows & Co.*, 2 F.3d 716, 722 (7th Cir. 1993), and its progeny.

Judge Dugan, however, reserves her right to argue that the government has not carried its burden.

*5. Motion to preclude defendant from eliciting her own out-of-court statements, including a self-serving statement she made to MPD officers on April 22, 2025.*

Without additional context or a more specific request, it is difficult to respond to this motion. *See* ECF 59 at 4 (Judge Dugan's 11th motion in limine) (request to require the government to produce the full transcripts of audio recordings and identify the portions of the audio recordings it intends to introduce at trial). If the government contends that some of the statements Judge Dugan made to police officers are hearsay, it should identify those. First, out-of-court statements are not necessarily hearsay. *See* FED. R. EVID. 613(b), 801(c), 801(d)(1). Second, statements offered for a relevant purpose other than their truth are not "hearsay" at all. FED. R. EVID. 801(c)(2). And third, even hearsay may be admissible depending on the evidence the government elicits. *See* FED. R. EVID. 106, 803(1)–(3); 803(6)–(8), 803(10), 806, and 807.

*6. Motion to bar argument or questioning concerning the motives of law enforcement.*

Judge Dugan objects to this motion. The indictment alleges that the agents planned to arrest Flores-Ruiz in a public hallway. The government, then, has put the agents' intentions and motives at issue. Presumably, the government itself will be introducing evidence of its agents' motives and plans. Judge Dugan has a right to "meaningful cross-examination" once that door is open. *United States v. Martin*, 618 F.3d 705, 728 (7th Cir. 2010).

Moreover, evidence showing bias always is relevant. *Id.* at 727; *see also United States*

*v. Abel*, 469 U.S. 45, 49–53 (1984) (bias is broadly admissible on issues of credibility).

Finally, the government made a rushed charging decision, which required the agents to attempt to fit their investigation to the previous charging decision. This made the agents work backwards. And it bears directly on whether the government can prove the elements of its case. For example, the indictment alleges that the agents planned to arrest Flores-Ruiz in the public hallway. The evidence shows they actually decided to arrest Flores-Ruiz only outside the courthouse. The government is attempting to use a motion *in limine* to cover its error. To the extent that the agents deny their plan changed (in contradiction to the record evidence), Judge Dugan should be able to demonstrate and explain to the jury why they are motivated to change their stories.

When the government adds specific detail to an indictment, it becomes essential to the charged crime and—obviously—relevant. *United States v. Coleman*, 138 F.4th 489, 499 (7th Cir. 2025). The government alleged the plan was a public hallway arrest, just like it alleged Judge Dugan "falsely" told agents they needed a judicial warrant. It now must prove its allegations. And, importantly, she may dispute both allegations in the indictment.

***7. Motion to bar testimony, argument, or commentary to the effect that a judicial warrant is required for the arrest of an individual under the immigration laws.***

Judge Dugan objects to this motion. Again, the government made this an issue. It alleges that Judge Dugan committed obstruction by "confronting members of a United States Immigration and Customs Enforcement (ICE) Task Force and *falsely* telling them they needed a judicial warrant to effectuate the arrest of E.F.R." ECF 6 (emphasis added). It now seeks a pretrial order that its allegations are true. Moreover, the indictment alleges that

Judge Dugan knew that a warrant had been issued for Flores-Ruiz. Evidence of what Judge Dugan knew will overlap significantly with what was actually true.

***8. Motion to bar evidence or argument concerning the arrest of the defendant or alluding to alternative means of bringing her before the Court for an initial appearance.***

Judge Dugan objects to this motion. At trial, Judge Dugan must be permitted to "discredit the caliber of the investigation or the decision to charge the defendant," including by "an attack on the integrity of the investigation." *Kyles v. Whitley*, 514 U.S. 419, 445–46 (1995) (internal quotation marks and source omitted). If agents are being pressured by their supervisors to match the evidence to a hasty and inaccurate charging decision, that bears on their bias, motive, credibility, and the integrity of the investigation. *See* ECF 59 at 3–4 (Judge Dugan's tenth motion *in limine*).

***9. Motion to bar evidence or comment concerning the duration of the investigation, namely, the length of the interval between the alleged criminal conduct and the issuance of criminal charges.***

Judge Dugan objects to this motion. Again, she must be permitted to "discredit the caliber of the investigation or the decision to charge the defendant," including by "discrediting of the police methods employed in assembling the case" and "the thoroughness and even the good faith of the investigation, as well." *Kyles*, 514 U.S. at 445–46 (internal marks and source omitted). The haste is relevant: it goes to bias, accuracy of fact-finding, and the quality and reliability of the investigation.

***10. Motion to bar argument that the defendant should not be convicted because she did not succeed in preventing E.F.R.'s arrest.***

Judge Dugan objects to this motion. She has already informed the Court of her arguments on materiality. *See* ECF 57 (Jury Instructions No. 1, 3, 7, and 10). The government must prove that she materially obstructed an arrest.

Additionally, the government alleges that Judge Dugan *corruptly* endeavored to influence, obstruct, and impede a proceeding by committing affirmative acts to assist Flores-Ruiz evade arrest in the public hallway outside of Courtroom 615. *See* ECF 6 ("the location of the planned arrest (a public hallway outside of Courtroom 615 of the Milwaukee County Courthouse)").

Again, the government has made this an issue by including it in the indictment. "Specific language in an indictment that provides detail beyond the general elements of the crime makes the specified detail essential to the charged crime and must, therefore, be proven beyond a reasonable doubt." *Coleman*, 138 F.4th at 499 (quoted source omitted). Judge Dugan is going to argue that she's not guilty. One reason she's not guilty, contrary to the indictment, is that at least by the time he emerged into the hallway (and maybe before) there was not a plan to arrest Flores-Ruiz in the hallway that she could have corruptly endeavored to obstruct.

***11. Motion to bar evidence of other ICE enforcement actions in the Milwaukee County Courthouse or elsewhere (except for impeachment/bias).***

Judge Dugan objects to this motion. As outlined above, previous ICE arrests at the Milwaukee County Courthouse are directly relevant to Judge Dugan's subjective mindset

on April 18, 2025. It goes to the element of corruption in Count 2 at very least. Moreover, those arrests prompted emails that the government intends to use at trial. The context of those emails is relevant to how they were understood by their recipients, including Judge Dugan.

### 12. Motion to bar evidence of defendant's alleged "good motives."

Judge Dugan does not know what evidence the government seeks to bar here. She intends to elicit evidence and make arguments about her state of mind on April 18, 2025. Her good character also is relevant and admissible. FED. R. EVID. 404(a)(2)(A), 405. The government must prove she instead had corrupt motives or a corrupt intent. Her motives are therefore relevant. If the government has some other concern, she can address it.

### 13. Motion to bar evidence of defendant's "prior good acts."

Judge Dugan objects to this motion because it's unclear what the government is attempting to exclude here.

Dated at Madison, Wisconsin, November 14, 2025.

Respectfully submitted,

HON. HANNAH C. DUGAN, *Defendant*

*s/ R. Rick Resch*
John H. Bradley
Wisconsin Bar No. 1053124
R. Rick Resch
Wisconsin Bar No. 1117722
William E. Grau
Wisconsin Bar No. 1117724
Dean A. Strang
Wisconsin Bar No. 1009868

STRANG BRADLEY, LLC
613 Williamson Street, Suite 204
Madison, Wisconsin 53703
(608) 535-1550
john@strangbradley.com
rick@strangbradley.com
william@strangbradley.com
dean@strangbradley.com

          *s/ Steven M. Biskupic*
          Steven M. Biskupic
          Wisconsin Bar No. 1018217

STEVEN BISKUPIC LAW OFFICE, LLC
P.O. Box 456
Thiensville, Wisconsin 53092
bisklaw@outlook.com

          *s/ Jason D. Luczak, Nicole M. Masnica*
          Jason D. Luczak
          Wisconsin Bar No. 1070883
          Nicole M. Masnica
          Wisconsin Bar No. 1079819

GIMBEL, REILLY, GUERIN & BROWN LLP
330 East Kilbourn Avenue, Suite 1170
Milwaukee, Wisconsin 53202
(414) 271-1440
jluczak@grgblaw.com
nmasnica@grgblaw.com