# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

    **v.**                                   **Case No. 25-CR-89**

**HANNAH C. DUGAN**
          **Defendant.**

## <u>DECISION AND ORDER</u>

The government charged defendant Hannah Dugan with concealing a person from arrest, 18 U.S.C. § 1071, and obstructing removal proceedings of the Department of Homeland Security, 18 U.S.C. § 1505. Summarized, the government alleges that on April 18, 2025, defendant, a state court judge, concealed from arrest and obstructed the apprehension of a person (E.F.R.) wanted by federal immigration authorities for removal. The case is set for trial on December 15, 2025. This order addresses the parties' motions in limine.

## I. GOVERNMENT'S MOTIONS

The government filed a consolidated motion in limine making 13 requests, as well as an additional motion to bar defendant's proposed expert testimony. I address each in turn.

**A.**    **Consolidated Motion**

    **1.**     **Potential punishment/collateral consequences**

The government moves to preclude defendant from mentioning potential punishment or any collateral consequences flowing from conviction. (R. 56 at 10-11.) Defendant does not object. (R. 65 at 7.) This request is granted.

### 2.      Jury nullification

The government moves for an order precluding defendant from presenting evidence or argument designed to induce jury nullification, including but not limited to appeals for the jury to decide the case based on disagreement with immigration policy and enforcement, or based on alleged governmental misconduct. (R. 56 at 11-13) Defendant does not object to the government's request to prohibit her from arguing for jury nullification or appealing to jurors to decide the case based on their personal views of immigration policy and enforcement. (R. 65 at 8.) That request is granted.

### 3.      Discovery requests

The government moves to bar discovery requests or commentary regarding discovery in the presence of the jury. (R. 56 at 13-14.) Defendant responds that she is not opposed to the general idea of not arguing discovery disputes in front of the jury. "Obviously, however, both parties will be commenting on discovery throughout the trial. For example, a question, answer, or comment during trial that a document was produced by the government is proper and necessary, as may be the timing of that production." (R. 65 at 8.) With that understanding, the request is granted.

### 4.      Reasonable doubt

The government moves to bar the defense from defining "reasonable doubt." (R. 56 at 14-15.) Defendant does not object but notes that she reserves her right to argue the government has not carried its burden. (R. 65 at 8-9.) This request is granted.

### 5.      Defendant's out-of-court statements

The government moves to preclude defendant from eliciting her own out-of-court

statements, including a self-serving statement she made to police officers on April 22, 2025, several days after the events at issue. The government argues such statements would be hearsay, and the "rule of completeness" would not require their admission. (R. 56 at 15-16.) Defendant responds that without additional context or a more specific request, it is difficult to respond to this motion. She notes that out-of-court statements are not necessarily hearsay, and that statements offered for a relevant purpose other than the truth are not hearsay at all. (R. 65 at 9.)

A defendant's out-of-court statement, when offered by the defense, is generally hearsay. United States v. Pulliam, 973 F.3d 775, 783 (7th Cir. 2020) (citing United States v. Sanjar, 876 F.3d 725, 739 (5th Cir. 2017)). The Seventh Circuit has also noted that "[d]efendants often try to justify their actions when speaking with FBI agents and other law enforcement officials by disclaiming criminal intent. Such an exculpatory statement has nothing to do with Rule 106 [the rule of completeness]." United States v. Smith, 150 F.4th 832, 849 (7th Cir. 2025). In those circumstances, the appropriate vehicle for the introduction of such evidence is for the defendant to take the stand and testify that she did not think she was doing anything wrong, rather than using Rule 106. Id. (citing United States v. Faruki, 803 F.3d 847, 857 (7th Cir. 2015)).

Without knowing the precise statements defendant may seek to introduce and why, I cannot issue a definitive ruling. Defense counsel should alert the court prior to introducing such statements and be prepared to explain the basis for admission consistent with the standards set forth above.

**6. Motives of law enforcement**

The government moves to bar argument or questioning concerning the motives of law enforcement. "[T]he defense team has claimed to reporters that . . . this case was as an attack

3

on the independent judiciary and is politically charged. The defense team also told reporters that the government 'rushed to judgment' in issuing charges and then was 'stuck' going forward." (R. 56 at 17.) The government argues that evidence bearing on its decision to prosecute is extraneous and collateral and should be excluded from trial. (R. 56 at 17.)

Defendant objects to this request. She notes that the indictment alleges the agents planned to arrest E.F.R. in a public hallway, but their plans apparently changed, as they ended up arresting him outside the courthouse. This, defendant contends, puts the agents' intentions and motives at issue. (R. 65 at 9.) Defendant further contends that the government made a rushed charging decision, which required the agents to attempt to fit their investigation to the previous charging decision. "To the extent that the agents deny their plan changed (in contradiction to the record evidence), Judge Dugan should be able to demonstrate and explain to the jury why they are motivated to change their stories." (R. 65 at 10.)

I do not understand defendant to argue that she should be permitted to argue to the jury that the prosecution is politically motivated. See United States v. Johnson, 605 F.2d 1025, 1030 (7th Cir. 1979) ("[T]he defendant alleges that the 'indictment was a political instrument in soliciting defendant's cooperation with the FBI probe of the CETA Program and the DEA drug investigations centered upon the black community.' Had the judge in his discretion permitted excursions into extraneous and collateral matters unrelated to the particular drug transactions, the trial would only have been delayed and the issues confused."). Both sides will be allowed to present relevant evidence regarding what happened and why.

## 7. Requirement of a judicial warrant

The indictment alleges that defendant "falsely" told ICE agents they needed a judicial warrant to arrest E.F.R. (R. 6 at 2.) The government argues defendant should be precluded

4

from arguing that a judicial warrant, as opposed to an administrative warrant, is needed to arrest an alien in a public hallway. (R. 56 at 18.) Indeed, the government contends, the evidence will show that defendant had reason to know that an administrative warrant was sufficient. (R. 56 at 18-19.)

Defendant objects, noting that the government made this an issue by alleging she committed obstruction by "confronting members of a United States Immigration and Customs Enforcement (ICE) Task Force and underline falsely telling them they needed a judicial warrant to effectuate the arrest of E.F.R." (R. 65 at 10, quoting R. 6, emphasis added.) The indictment also alleges that defendant knew a warrant had been issued for E.F.R. "Evidence of what Judge Dugan knew will overlap significantly with what was actually true." (R. 65 at 11.)

Defendant does not present contrary authority on the issue of whether a judicial warrant was actually required here.[1] But the indictment does make what defendant knew relevant; both sides should be permitted to present evidence on that point.

### 8. Defendant's arrest

The government seeks to bar evidence or argument concerning defendant's arrest or alluding to alternative means of bringing her to court for an initial appearance, arguing that the only purpose served by introducing such evidence would be to invite jurors to find fault with the government or conclude that defendant already had been punished for her wrongful conduct, encouraging jury nullification. (R. 56 at 19.) Defendant objects, arguing she must be permitted to discredit the caliber of the investigation or the decision to charge her. (R. 65 at 11.)

---

[1]In the briefing on her motion to dismiss, defendant stated: "Assuming she said what the government claims now, Judge Dugan probably was wrong about whether an ICE administrative warrant meets Fourth Amendment muster, but that is not entirely settled." (R. 38 at 11 n.4.)

5

Defendant should be permitted to challenge the integrity of the investigation. However, it is unclear why this would include evidence about her arrest. Absent further explanation as to how this could be relevant, the government's request will be granted.[2]

### 9. Duration of the investigation

The government moves to bar evidence or comment concerning the duration of the investigation into the events of April 18, 2025, arguing it is not relevant to whether the government has proven its case beyond a reasonable doubt. (R. 56 at 19-20.) The government notes that members of the defense team have told the media that this case was a "rush to judgment." The government contends: "The evidence will speak for itself, and the jury will either agree or disagree that it establishes the defendant's guilt. Evidence or comment about the relatively short interval between the alleged crime and the issuance of charges is not relevant." (R. 56 at 20.)

Defendant objects to this request, noting she must be permitted to discredit the caliber of the investigation or the decision to charge her. "The haste is relevant: it goes to bias, accuracy of factfinding, and the quality and reliability of the investigation." (R. 65 at 11.)

It is difficult to rule on this request in the abstract. As indicated, defendant should be permitted to challenge the integrity of the investigation. However, I am disinclined "to allow this trial to become a trial of the investigation." United States v. Robbins, 197 F.3d 829, 845 (7th Cir. 1999). Under Fed. R. Evid. 403, the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of confusing the issues, misleading the jury,

---

[2]In her motion in limine, defendant seeks permission to elicit admit statements by the Attorney General and FBI Director about her alleged conduct. (R. 59 at 3.) For the reasons set forth below, I will deny that motion.

undue delay, or wasting time. See United States v. Estell, 641 Fed. Appx. 552, 556 (7th Cir. 2016) ("[T]rial judges have discretion to limit argument on tangential issues that could confuse the jury, and that includes a defendant's complaints about the adequacy of the government's investigation."). The balance will be struck at trial.

**10.    Success in preventing E.F.R.'s arrest**

The government moves to bar argument that defendant should not be convicted because she did not succeed in preventing E.F.R.'s arrest. (R. 56 at 20.) "In other words, the defense may attempt to argue 'no harm; no foul.' Such comment should be disallowed because neither of the statutes charged in the indictment requires that the defendant succeed to be convicted or that law enforcement could have changed the location of the arrest." (R. 56 at 21.) The government cites authority that neither of the charging statutes require the defendant succeed in concealing the person or obstructing the proceeding. (R. 56 at 21-22.)

Defendant objects, referring to her proposed jury instructions including an element of "materiality." Additionally, the government alleges that defendant corruptly endeavored to influence, obstruct, and impede a proceeding by committing affirmative acts to assist E.F.R. evade arrest in the public hallway outside of Courtroom 615. Defendant "is going to argue that she's not guilty. One reason she's not guilty, contrary to the indictment, is that at least by the time he emerged into the hallway (and maybe before) there was not a plan to arrest [E.F.R.] in the hallway that she could have corruptly endeavored to obstruct." (R. 65 at 12.)

The arguments that may be made to the jury will depend on the court's instructions, yet to be finalized. Defendant will be permitted to present evidence and argument that she did not endeavor to obstruct the arrest of E.F.R. I will otherwise defer ruling on request # 10 at this time.

7

**11. Other ICE enforcement actions**

The government moves to bar evidence of other ICE enforcement actions in the Milwaukee County Courthouse or elsewhere, arguing that, "except to impeach a witness or show bias, such collateral evidence has no relevance to the events of April 18, 2025, and should be excluded from the jury's consideration." (R. 56 at 22.) Defendant objects, arguing that previous ICE arrests at the Milwaukee County Courthouse and the evolving policies set forth by the chief judge are directly relevant to her subjective mindset on April 18, 2025. (R. 65 at 12-13.) "Moreover, those arrests prompted emails that the government intends to use at trial. The context of those emails is relevant to how they were understood by their recipients, including Judge Dugan." (R. 65 at 13.)

I agree with defense that such evidence may be relevant to defendant's mental state. This request is denied.

**12. Defendant's alleged "good motives"**

The government moves to bar evidence of defendant's alleged "good motives," arguing such arguments have the potential to mislead the jury because they suggest the defendant was privileged to break the law because of her moral beliefs or "good motives." (R. 56 at 22.) Defendant responds that she does not know what evidence the government seeks to bar here. She intends to elicit evidence and make arguments about her state of mind on April 18, 2025. The government must prove she had corrupt motives or a corrupt intent. Her motives are therefore relevant.

Absent more specifics, I cannot definitively rule on this request. Defendant will be allowed to present relevant evidence touching on her mental state.

### 13.    Defendant's "prior good acts"

The government moves to bar evidence of defendant's "prior good acts," noting she may seek to introduce evidence of her past law-abiding conduct. The government argues such evidence is inadmissible under Fed. R. Evid. 404(b). (R. 56 at 23, citing United States v. Hill, 40 F.3d 164, 168 (7th Cir. 1994) (prohibiting admission of "good acts" to prove that a defendant "had a good character and acted in conformity therewith"); United States v. Reese, 666 F.3d 1007, 1020 (7th Cir. 2012) ("Evidence that a defendant acted lawfully on other occasions is generally inadmissible to prove he acted lawfully on the occasion alleged in the indictment."); United States v. Santos, 65 F. Supp. 2d 802, 845-46 (N.D. Ill. 1999) ("A defendant may not seek to establish his innocence through proof of the absence of criminal acts on specific occasions.").)

Defendant "objects to this motion because it's unclear what the government is attempting to exclude here." (R. 65 at 13.) I will defer ruling at this time and consider the issue, if it arises, in the context of specific evidence at trial.

## B.    Expert Testimony

The government moves to exclude proposed expert testimony from an immigration lawyer regarding the meaning of certain statutory and regulatory terms, e.g., "pending proceeding." The government contends that the meaning of the term "proceeding" is a question of law to be decided by the judge in the context of jury instructions. (R. 69 at 3.)

The Seventh Circuit has consistently held that such testimony may be excluded. See United States v. Lupton, 620 F.3d 790, 799-800 (7th Cir. 2010) ("The court was correct in noting that the meaning of statutes, regulations, and contract terms is 'a subject for the court,

9

not for testimonial experts. The only legal expert in a federal courtroom is the judge.'") (quoting United States v. Caputo, 517 F.3d 935, 942 (7th Cir. 2008) (citation omitted)); see also United States v. Stewart, 433 F.3d 273, 311 (2d Cir. 2006) ("Clearly, an opinion that purports to explain the law to the jury trespasses on the trial judge's exclusive territory.").

Much of defendant's response discusses whether there was a "pending proceeding . . . before . . . the Department of Homeland Security" on April 18, 2025, as alleged in count two. "The Defense does not believe that the government can factually satisfy that requirement. The proffered expert testimony seeks to assert the underlying facts relevant to that inquiry. Those facts include the nature and extent of second-party involvement when an expedited removal proceeding has been completed 12 years earlier, as well as the lack of second-party involvement in the issuance of the warrant." (R. 70 at 9.) Defendant agrees that the court will define the law for the jury, including, apparently, the meaning of the phrase "proceeding before." (R. 70 at 9.) Defendant contends that she instead seeks to develop the factual record as to what pending administrative proceedings would entail. "Just as the government no doubt will seek to introduce the I-200 warrant, the Defense seeks to introduce evidence as to the facts surrounding any second-party involvement in the issuance of that warrant and the subsequent removal of an individual after an expedited removal order was entered 12 years earlier." (R. 70 at 9.)

It is unclear how the proposed expert will provide evidence as to the facts. The government has indicated it will have ICE witnesses provide lay testimony describing where the issuance and execution of the arrest warrant for E.F.R. fit in his overall immigration proceedings. (R. 69 at 8-9.) I will at the final pre-trial discuss with the parties permissible defense testimony, including from the proposed expert, on this issue.

10

## II. DEFENDANT'S MOTION

In her first motion, defendant seeks an order that the government cannot rely on her lawful official acts to sustain the charges; she also renews her immunity motion. In her second motion, defendant makes 12 additional requests (numbered 2-13).

### A.    First Motion

#### 1.    Official acts

Defendant argues that, because lawful acts do not and cannot obstruct or hinder under Seventh Circuit caselaw, the government (1) may not rely on or even introduce evidence of these lawful acts. Alternatively, the government (2) may not contest that they were official acts within a Wisconsin state judge's job (even if it is permitted to argue that they were done "corruptly"). (R. 58 at 1-2.) Defendant cites cases holding that an act one has a legal right to undertake does not obstruct or hinder. (R. 58 at 3, citing United States v. Edwards, 869 F.3d 490, 492-99 (7th Cir. 2017); United States v. Matthews, 505 F.3d 698, 705-06 (7th Cir. 2007); see also Arthur Andersen LLP v. United States, 544 U.S. 696, 705-06 (2005).) In these cases, the courts recognized that corrupt interference with an investigation would not exist where, e.g., a mother suggests her son invoke his right against compelled self-incrimination, a wife persuades her spouse not to disclose marital confidences, or a lawyer counsels a client not to turn over documents pursuant to a valid claim of privilege. Edwards, 869 F.3d at 498 (citing Arthur Andersen, 544 U.S. at 704); Matthews, 505 F.3d at 705. Rather, the term "corruptly" requires the person act with consciousness of wrongdoing. Edwards, 869 F.3d at 498 (citing Arthur Andersen, 544 U.S. at 706).[3] Defendant contends that, because she had a legal right

---

[3]In Matthews, the court stated: "As explained in Arthur Andersen, under limited circumstances, a defendant is privileged to obstruct the prosecution of a crime. That privilege

11

to do each of the five acts alleged in the indictment—all were within the scope of her authority as a Wisconsin state judge—there necessarily was no consciousness of wrongdoing. (R. 58 at 4.)

> So, Judge Dugan moves to exclude all government evidence that she impeded or in any way hindered, within the scope of Counts 1 and 2, the efforts of federal agents to arrest E.F.R. in a state courthouse's public hallway by engaging in the five lawful acts that the indictment lists. As both the magistrate judge and this Court now have held, without government objection, the five acts alleged in Count 2 were "all part of a judge's job;" each was an official act, in other words. Dkt. 43 at 30 (July 7, 2025); Dkt. 48 (August 26, 2025). She had a legal right to engage in those acts, unlike the police chief in <u>Matthews</u> who for well over two months took repeated steps, including enlisting others, to conceal a gun from federal investigators to help his friend escape legitimate prosecution. <u>Matthews</u>, 505 F.3d at 701–03, 706–07. In sharp contrast, each of the five acts listed in this indictment were ones that Judge Dugan had a legal right to undertake in the minutes after she learned that ICE agents were outside her courtroom. She was within the lawful powers of her job.
> . . .
> So, as to these five named official acts, the evidence the government seeks to offer is not relevant to any proper issue, FED. R. EVID. 401, 402, and only could mislead the jury by inviting it to convict when Judge Dugan had a lawful right to act as she did. That serious risk of mischief and unfair prejudice would far outweigh any indirect or attenuated probative value the evidence might have. FED. R. EVID. 403.
>
> 2. Alternatively, if the Court allows the government to offer evidence of those five acts, the government may not argue or offer evidence contending that they were anything other than official acts. Under this less favored alternative, the government could contend that Judge Dugan did one or more "corruptly," for purposes of Count 2. But it cannot contest that they in fact were acts within the scope of her authority as a Wisconsin judge. Law of the case establishes that clearly here—with nary an objection from the government. Dkt. 43 at 30; Dkt. 48 at 27.

(R. 58 at 5-7.) Finally, defendant renews her motion to dismiss on the basis of judicial immunity.

———————————

flows from the defendant's enjoyment of a legal right--such as the right to avoid self-incrimination. By including the word 'wrongfully' in the definition of 'corruptly' and criminalizing only the act of 'wrongfully impeding the due administration of justice,' the instructions directed the jury to convict only those who have no legal right to impede justice." 505 F.3d at 706.

12

(R. 58 at 7-8.)

As the government notes, defendant's motion in limine would in effect confer partial judicial immunity and put much of the government's proof off limits. I agree that the correct approach is to permit the jury to consider all of defendant's conduct on April 18, 2025, in deciding whether she concealed an alien under § 1071 or corruptly endeavored to obstruct a proceeding under § 1505. (R. 67 at 2.)

The cases upon which defendant relies do not suggest a different result. As the government notes, Edwards and Matthews were jury instruction cases, construing the term "corruptly" to require wrongful conduct, not immunity cases placing official judicial acts outside the scope of the statutes. (R. 67 at 3.) As I noted in denying defendant's motion to dismiss, there is no basis for granting immunity simply because some of the allegations in the indictment describe conduct that could be considered part of a judge's job. In the bribery cases, for instance, the defendant-judges used judicial acts or tools as the means to accomplish an unlawful end. As the Seventh Circuit explained in rejecting a similar argument made by a lawyer:

> [I]t is not the means employed by the defendant that are specifically prohibited by the statute; instead, it is the defendant's corrupt endeavor which motivated the action. Otherwise lawful conduct, even acts undertaken by an attorney in the course of representing a client, can transgress § 1503 if employed with the corrupt intent to accomplish that which the statute forbids.

United States v. Cueto, 151 F.3d 620, 631 (7th Cir. 1998); see also United States v. Cintolo, 818 F.2d 980, 992 (1st Cir. 1987) (holding that means, though lawful in themselves, can cross the line of illegality if employed with a corrupt motive).

I decline to reconsider my previous ruling on the immunity motion or to adopt an evidentiary standard based on an official/unofficial distinction inconsistent with that ruling. As

13

for defendant's secondary request, she will be free to present evidence and argument that the events of April 18, 2025, involved the routine work of a state court and judge, and the government will be allowed to contend that defendant added extraneous activities to her usual duties in order to defeat enforcement of federal immigration law. With that understanding, defendant's first motion in limine is denied.

## B. Second Motion

### 2. Sequestration

Defendant moves to exclude all non-party witnesses from the courtroom following their introduction to the panel of potential jurors and to order all non-party witnesses not to discuss their proposed or completed testimony with any other potential witness throughout the duration of the trial. (R. 59 at 1.) The government does not object, so long as its case agent is exempted. (R. 67 at 5.) With that exception, the request is granted.

### 3. Written instructions

Defendant requests the jury instructions be provided to the jury panel in written form. (R. 59 at 1.) The government does not object. (R. 67 at 5.) Consistent with my standard practice, this request will be granted.

### 4. Character evidence

Defendant moves to prohibit the government from introducing any character evidence, including other crimes, wrongs, or acts, from witnesses that has not been deemed previously by the court to pertain to an admissible purpose. (R. 59 at 1-2.) To the extent this simply is meant as a request to apply Fed. R. Evid. 404, the government has no objection. (R. 67 at 6.) This request is granted.

14

### 5.    Victims' rights

Defendant moves to prohibit the government from arguing or eliciting testimony that she violated Chapter 950 of the Wisconsin Statutes or Article I, Section 9m of the Wisconsin Constitution (the state's victims' rights provisions), arguing such evidence would not be relevant and would be substantially prejudicial. She further argues that allowing such evidence would create a mini-trial on an irrelevant issue. (R. 59 at 2-3.)

The government agrees there should not be a "mini-trial" about whether defendant violated Marsy's Law. However, how defendant handled E.F.R.'s hearing, and whether it was routine or "business as usual" is, the government contends, relevant to her intent. (R. 67 at 6.) The government indicates that E.F.R. was charged with battery, and his alleged victims were present for the hearing on April 18, 2025. (R. 67 at 6-7.) Defendant handled E.F.R.'s case off the record, without notifying the victims or the prosecutor. "Whether the treatment of E.F.R.'s victims was a routine practice, or an aberration, is relevant to her state of mind. Similarly, whether the treatment of E.F.R.'s victims was consistent with the guidance she received about Marsy's Law is likewise relevant to her intent." (R. 67 at 8.)

I will permit the government to introduce evidence regarding whether defendant handled E.F.R.'s case in a customary fashion. This would seem relevant to her intent and to the position she has taken throughout these proceedings—that all of the charged acts were done in the ordinary course of a judge's duties. However, I will exclude, pursuant to Rule 403, evidence or argument that defendant violated Wisconsin's victims' rights laws. The probative value of such evidence is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time. Relevant to the risk of confusion, the training memorandum upon which the government relies is equivocal regarding whether

15

Marsy's Law applies to off-the-record continuances. It also appears the Wisconsin appellate judiciary has not definitively ruled regarding the contours of Marsy's Law in this context. See Finding of Contempt in State v. Simmons, No. 2022AP1396-CR, 2023 Wisc. App. LEXIS 1090, at *17 (Wis. Ct. App. Oct. 17, 2023); see also Wis. Stat. § 906.15(2)(d) (providing that crime victims may not be excluded "unless the judge or circuit court commissioner finds that exclusion of the victim is necessary to provide a fair trial for the defendant").

The government cites United States v. Proano, 912 F.3d 431, 438-39 (7th Cir. 2019), for the proposition that a defendant's training may be relevant to intent. However, the defendant in that case was a police officer charged with willful deprivation of constitutional rights based on a shooting incident. Id. at 434. The Seventh Circuit upheld the admission of training evidence, explaining:

> We have before recognized that evidence of departmental policies can be relevant to show intent in § 242 cases. Other circuit courts have as well. Those decisions, expressly or impliedly, acknowledge that an officer's training can help inform his state of mind in certain circumstances. If, for example, an officer has been trained that officers should do certain things when confronted with tense situations, and he does those things, the fact that he acted in accordance with his training could make it less likely that he acted willfully. And vice versa: If, as here, an officer has been trained that officers should not do several things when confronted with tense situations, yet he does those things anyway, the fact that he broke from his training could make it more likely that he acted willfully. The district court correctly accounted for both sides of the coin, admitting both Proano's and the government's proposed training-related evidence.

Id. at 439 (internal citations omitted).

The training evidence in Proano bore directly on whether the defendant wilfully deprived the victims of their constitutional rights. The evidence here, conversely, relates to a collateral issue, i.e., whether defendant violated the rights of E.F.R.'s alleged victims on April 18, 2025. Any limited probative value of such evidence is substantially outweighed by the danger of unfair

16

prejudice (e.g., whether defendant violated other provisions of state law, in addition to the federal laws charged in the indictment), confusion (given the apparent uncertainty as to how the law applies to off-the-record continuances), and delay/waste of time (as each side presents its own evidence on this collateral issue). Defendant's motion is granted, as stated.

### 6. Personal beliefs

Defendant moves to prohibit the government from arguing or questioning any witness as to whether they personally believe she is guilty or that she committed the offenses with which she is charged. (R. 59 at 6.) The government does not object, so long as the defense is prohibited from doing the same. (R. 67 at 9.) This request is granted.

### 7. Expert testimony

Defendant moves to prohibit the government from eliciting undisclosed expert testimony. (R. 59 at 3.) The government does not oppose this motion and does not intend to call an expert to render an opinion on any scientific, technical, or other issue requiring specialized knowledge within the meaning of Rule 702. (R. 67 at 10.) The request is granted.

### 8. Administrative warrants

Defendant moves to prohibit the government from eliciting expert testimony or a legal opinion from lay witnesses regarding administrative warrants, including their validity and who has the authority to issue them. (R. 59 at 3.) The government agrees that no expert opinion would be appropriate on legal issues such as these, which are the proper subject of jury instructions given by the court. (R. 67 at 12.) The government does indicate that it will have witnesses from ICE prepared to testify as to the issuance of the arrest warrant for E.F.R. and where the attempted execution of that warrant fit in the overall immigration process for him.

17

"That is neither expert testimony nor a legal opinion but instead permissible factual testimony from individuals with knowledge." (R. 67 at 15; see also R. 69 at 8-9.) As the government intends to call no expert witness, this request appears to be moot.

**9.      Circuit court procedures**

Defendant moves to prohibit the government from eliciting expert testimony from lay witnesses regarding Milwaukee County Circuit Court procedures. (R. 59 at 3.) The government responds that any testimony from witnesses about "court procedures" will not involve expert testimony on a subject that is outside of the ability of jurors to comprehend but rather factual observations and perceptions, e.g., from lawyers, court personnel, and law enforcement. (R. 67 at 17-18.) "To the extent this type of testimony relates to something the defendant views as 'court procedures,' it clearly would not involve rendering an expert opinion on something requiring scientific, technical, or specialized knowledge. Rather, it would involve factual observations or, in some instances, permissible lay opinions to explain why they took notice of certain conduct and/or why they found it unusual." (R. 67 at 18.) The government further contends that such observations and perceptions are relevant to defendant's intent in this case, given her filings and statements that she did nothing wrong, and that the evidence will show her conduct and the proceedings that day were routine and simply "business as usual." (R. 67 at 18.)

As indicated, I will given the government some leeway to demonstrate that the proceedings in E.F.R.'s case were handled in an unusual fashion. It appears that evidence offered in the form of lay opinion under Fed. R. Evid. 701 may be part of that presentation. As the government intends to call no expert witness on the issue, defendant's in limine request appears to be moot.

18

### 10.  Attorney general statements

Defendant seeks permission to elicit statements made to the media and on social media by the Attorney General and the Director of the FBI about her alleged actions on April 18, 2025. She contends such statements are admissible as statements made by a party opponent, Fed. R. Evid. 801(d)(2), and are relevant because they show bias in the investigation and prosecution. (R. 59 at 3.)

The government responds that, while bias is broadly admissible on issues of credibility, neither the Attorney General nor the FBI Director will testify in this case. (R. 67 at 19.) Without more, I agree with the government defendant should not be permitted to inject national political figures into this trial. Any slight probative value of this evidence is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time. Fed. R. Evid. 403. Defendant's motion is denied.

### 11.  Audio recordings and transcripts

Defendant moves for an order requiring the government to produce the full transcripts of audio recordings and identify the portions of the audio recordings it intends to introduce at trial. The government should also be required to produce those transcripts and enhanced versions of audio recordings and identify which portions it intends to play, ahead of trial, to prevent unfair surprise and prejudice. (R. 59 at 4.)

The government responds that it anticipates producing final versions of the enhanced recordings and a transcript to the defense as soon as those items are finalized—and certainly in advance of the final pretrial conference. The government also will identify relevant excerpts of the recordings in its exhibit list and will seek a stipulation as to the admissibility of the

enhanced recordings and transcript to streamline trial proceedings. For these reasons, the government contends this request should be denied as moot.

I will address this issue at the final pre-trial.

**12. Rule of completeness**

Defendant seeks an order allowing her to introduce the complete recordings or transcripts of audio recordings in response to the government introducing partial versions of recordings and transcripts, under the rule of completeness. (R. 59 at 4-5.) The government responds that it does not object to the introduction of any portion of the recordings inside Courtroom 615 on the morning of April 18, 2025, that satisfy the requirements of Rule 106. (R. 67 at 21.) I will address this issue, to the extent necessary, at trial.

**13. Grand jury materials**

Defendant seeks an order requiring the government to produce grand jury materials at least two weeks before trial. (R. 59 at 5.) The government responds that, before defendant filed her motion, it already had agreed to provide applicable grand jury materials to her counsel by that date. The government also already provided written statements that various witnesses had presented to the grand jury as part of their testimony. The government therefore has no objection to the entry of an order requiring it to provide grand jury materials for the witnesses it intends to call in its case-in-chief at least two weeks before trial. (R. 67 at 21.) This request is granted.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that the government's consolidated motion (R. 56) is granted in part and denied in part, as stated herein, and the government's motion to prohibit

20

expert testimony on the meaning of statutes and regulations (R. 69) is granted in part, as also stated herein.

**IT IS FURTHER ORDERED** that defendant's first motion (R. 58) is denied, and defendant's omnibus motion (R. 59) is granted in part and denied in part, as stated herein.

Dated at Milwaukee, Wisconsin, this 25th day of November, 2025.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge