_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 25-CR-89 |
| | ) | |
| v. | ) | Milwaukee, WI |
| | ) | |
| HANNAH C. DUGAN, | ) | December 15, 2025 |
| | ) | 9:07 a.m. |
| Defendant. | ) | |

_____

TRANSCRIPT OF JURY TRIAL
EXCERPT OF DEFENSE OPENING
BEFORE THE HONORABLE LYNN ADELMAN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff
UNITED STATES OF AMERICA:     United States Dept. of Justice
                              (ED-WI)
                              By:  MR. RICHARD G. FROHLING
                                   MS. KELLY BROWN WATZKA
                                   MR. KEITH S. ALEXANDER
                              Office of the US Attorney
                              517 E. Wisconsin Ave., Rm. 530
                              Milwaukee, WI  53202
                              Ph:  414-297-1775
                              richard.frohling@usdoj.gov
                              kelly.watzka@usdoj.gov
                              keith.alexander@usdoj.gov

For the Defendant              Steven Biskupic Law Office, LLC
HANNAH C. DUGAN:               By:  MR. STEVEN M. BISKUPIC
(Present)                      PO Box 456
                               Thiensville, WI  53092
                               Ph:  414-828-7233
                               bisklaw@outlook.com

                               Gimbel, Reilly, Guerin & Brown
                               By:  MR. JASON D. LUCZAK
                                    MS. NICOLE M. MASNICA
                               330 E. Kilbourn Ave., Ste. 1170
                               Milwaukee, WI  53202
                               Ph: 414-224-1440
                               jluczak@grgblaw.com
                               nmasnica@grgblaw.com

1

U.S. Official Court Reporter:  JENNIFER L. STAKE, RDR, CRR
Proceedings recorded by computerized stenography, transcript
produced by computer-aided transcription.

TRANSCRIPT OF PROCEEDINGS

THE CLERK: This is 25-CR-89, United States versus Dugan. Appearances, please.

MR. FROHLING: United States appears by Assistant United States Attorneys Rick Frohling, Kelly Watzka, and Keith Alexander. Also at counsel table is Special Agent Erin Lucker of the FBI. Good morning.

MR. BISKUPIC: Good morning, your Honor. Defendant appears in person and by her attorneys Steve Biskupic, Nicole Masnica, and Jason Luczak. We are ready to proceed.

* * * * *

MR. BISKUPIC: Good morning. Excuse me.

This picture's going to play a lot -- a role in this case. You're going to see that the defendant is on trial for sending Mr. Ruiz out a door 11 feet ten inches from the main door. The Government has got done telling you over the last almost hour that this defendant committed a crime for sending her out a door that's not even as far as away as your jury box, 11 feet ten inches.

If she sends him out the main door, there's a federal agent to the left and a federal agent to the right. She sends him out the side hallway exit, and there's a federal agent to the left and a federal agent to the right. That fact is not going to change throughout this trial.

No. 2, the encounter in the hallway, it takes eighteen

second -- nineteen seconds before the defendant directs them to the chief judge's chambers. That's all the interaction she has with these two federal agents. We're going to come back to that, because the Government wants you to presume guilt from that step on. She knew everything from that step on, according to the Government.

Let me just tell you right away, nobody tells her there's a warrant. It's all on the recording. She's surprised to hear ICE is in the hallway. The chief judge doesn't tell her. The bailiff doesn't tell her. All these characterizations that she knew what she was doing are based on a supposition that she was told that there was a warrant. Not till she's out in the hallway.

Next -- I'm Steve Biskupic. I'm one of her lawyers. This is Nicole. That's Jason. And there's Judge Dugan. She's been a Milwaukee County judge for ten years.

April 18th, Good Friday. Now, I am worried. I'm a little nervous up here. This is the most important week of her professional life. Normally, she's sitting up on the bench making lots of rulings. This week, she's on trial because the federal government wanted her to act a certain way with respect to ICE, and she didn't act that way.

Now, the judge is going to tell you three important things. Even though this woman is a judge and has been a judge for ten years, she's presumed innocent. You have all taken that oath

to presume that she's innocent and that these prosecution -- prosecutors have to prove her guilty.

Second, they have to prove all the elements beyond a reasonable doubt, even the technicalities, mainly, the intent on the acts beyond a reasonable doubt. And she doesn't have to do a thing. The lawyers, we could sit here and do nothing, and you are not supposed to take any negative impact from them. The burden is entirely on the prosecution. So if the defense doesn't do anything, it's still their burden.

And the reason I worry about that is you're like, "Well, she's a judge, shouldn't she tell us what happened?" The law says it doesn't matter whether you're the president, the judge, you're unemployed or homeless, you come into a courtroom and you are presumed innocent. The prosecution has the burden of proof beyond a reasonable doubt, and the defense can do nothing. Now, we're going to do some things.

Go ahead.

This is the Milwaukee County Court Complex. This is the historical courthouse. Her courtroom was on the Sixth Floor. But there's a couple other buildings involved that will become important.

Go ahead.

There's the Safety Building. There's the Criminal Justice Center, these two buildings in this complex. And prior to April 18th, there was upheaval in this complex. First, we had

a new president, a change of administrations and changes of policies.  ICE was going to get aggressive.  They were going to start going into courthouses in ways that they weren't before.

And then they did.  They show up on March 20, and they arrest a person after a hearing.  Then they come back on April 3rd, and they arrest someone.  They don't identify themselves.  They just grab someone from an elevator, and they arrest them before the hearing.

Now, legal warrants, like the prosecution has said, it's an administrative warrant, they can arrest people.  The judges in the county court complex, they don't react well.  Their immediate reaction is anger, confusion, even paranoia.  They start exchanging e-mails with each other.  I mean, there's almost -- there's not quite 50 judges.  They start saying, "Wait a minute.  Does this mean that Milwaukee County, who we work for, who we represent, who we're elected to serve, is cooperating with ICE?"

Second, hey, this immigration enforcement, this isn't just like regular warrants.  This isn't the same thing as a municipal warrant or a misdemeanor court where the defendant's served.  Immigration enforcement at the courthouse was hardly routine.  One judge says, you know, "I've had cases where warrants were executed where people were snatched out of the gallery.  Is that going to happen here?"  And so the judges even say, "I just saw an ICE squad parked in front of the

courthouse a while ago." All of this is relevant when the prosecution says that everything this defendant did was so methodical to thwart. The judges, as I say, are angry, confused, and even paranoid, even seeing a car. What is it that we're supposed to do as judges, Milwaukee County judges, with a federal warrant?

So they get three main concerns that end up getting circulated. First, what kind of warrant was ICE using? Second, the chief judge should set a policy of how we should react. And, third, the public needs to be informed and assured. What's going to happen if they come to the courthouse?

First, on what kind of warrant, you're going to hear this thing called an administrative warrant. The judges are used to judicial warrants. Those are warrants that are served under the Fourth Amendment. Judges sign them. These administrative warrants are totally within the ICE agency, and judges weren't familiar with them. They found the ICE question to be unsettled.

And even this part that the Government took one excerpt out about, oh, yeah, they can do it in a public hallway. Well, maybe not always. There's limits of law and policy of when you can execute an administrative warrant. And so the first question the judges always had, you're going to hear this repeated from the witnesses, when you say a warrant, is this a

judicial warrant?

The chief judge then gives the judges of Milwaukee County guidance. He says -- he sends around the policy or procedure and says an administrative warrant -- go ahead -- an administrative warrant means an ICE warrant does not compel courthouse personnel to cooperate. That's the biggest guidance that the chief judge gave to his judges. An administrative warrant did not compel his personnel to cooperate, whereas a federal judicial warrant, which is basically under the Fourth Amendment, go wherever you want, do whatever you want. A federal warrant allowed them to go into any spaces within the courthouse. That's the issue on the warrant.

Second, the chief judge drafts a policy and says ICE should check in first. He sends around and says court personnel must promptly refer ICE personnel to their immediate supervisor. Second, the supervising judge will notify the chief judge -- remember that when she sends them to the chief judge's chambers -- or the court administrator, which is in the same space as chief judge, of any ICE activity at the courthouse.

They'll be notified prior to any enforcement. That's what he tells them. You will notify us, the chief judge and the court administrator, prior to any execution of that warrant. And then the agents will certify compliance with ICE protocols and present IDs of all agents so that we know who is taking enforcement action.

We've got people in the hallway. They're not wearing IDs. They are -- they're law enforcement officers, but nobody knows. They need to check in so that we know who is arresting people. That's why they all get sent to the chief judge's chambers.

Other judges say the same thing. It's not just the chief judge. The other memos: "I strongly advise," says one judge, in a memo -- or an e-mail to her colleagues, including Judge Dugan -- "that ICE check in with the chief judge before any enforcement action so we can ensure that ICE is following all established policies."

Why were they so concerned about this kind of enforcement? You're going to hear people get arrested in the county courthouse all the time. But ICE was a different matter. Chief -- this is Judge Dugan, "ICE detentions are a different animal. Historical protocols are shifting quickly." And this was her experience.

Go ahead.

She said, "I have seen -- I've seen in my court more people not showing up for court. I've had immigration attorneys asking me just today about what protocols are in place because," she says, "it would be better to have a protocol because the public needs to know. We're in uncharted waters."

You show up at a hearing, you're in the gallery watching, can ICE just come and arrest you? That's why she's saying what -- what are the authority? What can the -- what can the judges

do?

And she says -- go back just a second -- such irony -- "You know, we are in some uncharted waters with some very serious and even potentially tragic community interest and risk in the balance." Little did she know that it was her head that was going to be at risk under these policies.

Go ahead.

So what were they going to -- why was it important to tell the public? The chief judge issues a press release, sends the press release to all the judges. He wants the public to know, and he wants his judges to know that the mere presence of ICE in the courthouse deters attendance. Second, he says, it erodes trust in the judicial system.

Go ahead.

It chills -- it has a chilling effect on the access to justice. It creates confusion over what are the legal protections. He says, "The court must remain a safe haven. And the presence of ICE can create confusion and misinformation."

So all before April 18th, we've got the judges concerned about what kind of warrant. We've got the chief judge setting a policy that says check in with the chief judge before you do any enforcement, and the public needs to be assured so that attorneys and parties all know what the risk is of coming to the courthouse.

April 18th, you're going to hear a lot about it. It's Good Friday. The chief judge had a hard time getting ahold of Judge Dugan. She wanted to leave by noon to go to church. She's got 33 cases set on her calendar. Let me just stop right there.

State court, you're going to hear -- this is misdemeanor court where the defendant presides over. They are hearing dozens and dozens of cases every day. There's not just, you know, one case in a nice courtroom like this. There's all kinds of activity happening. People are coming up to the tables, they're going up to the judge. That's why you're hearing over the microphones lots of people talking at the same time. There's an incredible amount of informality.

Everything in this courtroom is going to be formal. Everything in the Milwaukee County Courthouse was informal. And so when you hear little snippets here and snippets there and say, aha, we knew she did this or did this. There's every -- there's just so much happening. And she's got 20 cases set for 8:30 alone. Ten of them will eventually be heard off the record.

You're going to hear from all the people who practice law in the county courthouse, off the records are routine. Getting dates, getting in, getting out. The speed with which this happens, you're going to hear that sometimes an off the record can happen in 30 seconds or less. Here, the prosecution tells you that it's incriminating that it lasted over two minutes.

Zoom appearances, same thing. Parties are allowed to do them. Everyone has the opportunity to do it. It's routine in the court. It can be, if the parties want it.

So what happens? ICE shows up in the hallway. Nobody tells the judge that they're there with a warrant. They just say -- again, it's on the recording that they play. You'll hear it over and over. Nobody tells her that they have a warrant for Mr. Flores-Ruiz, instead she's told ICE agents are in the hallway.

So within 20 seconds, they're pointing them to the chief judge and going. And this judge -- this is Judge Dugan. That's Judge Cervera. Judge Cervera says, "I'll show you." I'll show you. Judge Dugan doesn't say "I'll show you." So when -- when the prosecution says she abandons her in the chief judge, she's says, I'll tell you, it's right there. It's literally ten steps away.

In the courtroom, again, lots happening. And you're going to see a lot of evidence. The defendant's reacting to confusion and uncertainty. But here's the thing, she doesn't ask for the case to be called first. The lawyer does. The lawyer pushes her way ahead. You're going to hear that kind of jockeying happens all the time. People want to get in and out.

That's why Mr. Piel, you'll hear from, who is at the table, he had a ten-minute hearing, but he wanted to get in and out because he had to get to Madison. And he'll tell you, lawyers

push ahead of each other all the time. So the lawyer for Mr. Ruiz pushes ahead. She's going to come in and tell you she's bouncing up and down, call my case first. The judge calls her case first.

Now, you just got being done told about what the law is. Everything the judge -- the incriminating acts have to have the natural and probable consequences of obstructing or -- and that's for Count 2 -- and prevent discovery. Like is any of this -- when you get done with this case, does any of this in the courtroom prevent discovery?

That's because -- go ahead -- this exit to the stairway. Ms. de la Rosa is going to testify they go into that private hallway. It's just the three of them, and Mr. Ruiz doesn't speak English. It's the judge and Ms. de la Rosa. And no matter what happens in the courtroom, the judge never tells her to use the stairway, never mentions that there was a stairway, never directs her to a stairway, walks partway down the hall and doesn't say, gives her no direction either in court nor in the hall to use the stairway.

When all is said and done, the judge, this judge, is on trial for her acts, not her thought of: A stairway? No. In there, she directs her, straight ahead, straight out the hallway. And you're going to see video of how the hallway goes. She points her straight down.

Go ahead.

But Ms. de la Rosa will be clear to you on the witness stand, she was never told that there was an ICE warrant for her client, and she was never told to take the stairwell.

They even walked together partway down the hall. She knew, the judge -- Ms. de la Rosa will say the judge knew that she was new. She mentored her. What does she do in the hallway? She's telling her about Zoom. She talking to her about her performance in the hearing. She's not shoving her out the door. She's giving her critiques about her performance. That's what Ms. de la Rosa is going tell you. And then the judge points straight out, go out that door.

And the best evidence of what everyone intended, they go straight out into the hallway where there's a federal agent to the left and a federal agent to the right. 11 feet ten inches, as I said, that's what she's on trial for.

Oh, yeah, you know, this -- everything that happens where Mr. Ruiz and all the victim and that, spillover; right? She's to blame, guilt by association because Mr. Ruiz fled, that's her fault, when all she did was send her out -- send him out into the hallway with his lawyer.

And that's really interesting because we -- there's going to be a lot of video. And it's going to show you -- go ahead -- that the agents are deciding not to arrest in the hallway. They send a text -- you're going to see, they have -- they're on a group text, "Our guy heading out now with his attorney."

They don't arrest. "Follow him, please."

Judge Dugan is on trial for obstructing a hallway arrest in which the agents decided not to arrest in the hallway. And we're going to -- there will be plenty of things about the chief judge's chambers and stuff about whether or not he did or did not give permission. All I ask you to focus on is the contemporaneous reports, because now after the fact everyone wants to blame Judge Dugan.

Go ahead.

So here's the video of the hallway exit.

(The video recording is playing.)

And you're going to see Ms. de la Rosa and her client. They're up at the top here. And they're coming out, and they're walking. And there's a federal -- if you stop right there, there's a federal agent to the right and then the federal agent by the garbage can. And they watch him, and that's when they send the text, "Our guy heading out now." We'll follow him.

So they follow him down the hall. They see him. He turns -- the agent just turns right around and starts walking with them.

(The video recording is playing.)

Mother and child walking in front. They're not fleeing. She's talking to him. Here's the federal agent keeping and eye on him. They go to the elevator bank. The agent follows them.

Here comes the other federal agent.  Now she wants -- trying to catch up.

(The video recording is playing.)

Now, here's the thing.  Watch the agents exiting from the chief judge's chambers.  They're standing right there.  They're looking through the window.  Here they come.  Just watch them. Watch their body language.

(The video recording is playing.)

Yeah, it takes a while.  They're not in any hurry.  They wrote in their reports that they ran down the hall.  Takes them longer to walk down the hall than all of the judge's exchange with them.  And now they're off the Sixth Floor.  And everything after that the prosecution wants to blame on Judge Dugan, because they had to go outside.

There was a policy.  It was a draft policy.  It said ICE agents should check in.  Federal agents should all come in and show their IDs in the chief judge's chambers.  Get in the courtroom, and the defense attorney pushes ahead of the other one and says, "Call my case."  Judges, you'll see in this case, judges in all cases, they try to balance the interests of the parties.  They serve -- they're not here to just serve ICE. They're not here to favor one side or the other.  They're supposed to provide balance.

And that's what Judge Dugan tried to do that day.  Balance was send them the other hallway, not through the back, not

through the commotion, because you're going to hear from the Government's own witnesses that she didn't like arrests in her courtroom. She sends them out 11 feet ten inches. There's no concealment. There's no obstruction.

And that -- go ahead -- ladies and gentlemen, when we get done with this trial, Count 1 there's a bunch of elements. But they have to prove that she intended to prevent discovery. Think about that concept, intending to prevent discovery. I'm going to send him out -- and here's the other interesting thing. You know that video of the agents walking down the hallway, they don't know what's going on in the courtroom. They don't care what's going on in the courtroom. They're not in the courtroom. They're just in the hallway.

So all this evidence of whether the victims heard the off the record or what went on, the federal agents in the hallway aren't paying any attention to that. They're waiting for him to come out. And she sends them out, again, not even the width of your jury box. So no action prevented the discovery in the hallway. She sends them out the main door, it's the same result.

For Count 2, there's is no corrupt intent. She struggling to follow the judge's -- chief judge's policy. She's struggling to balance the interest, as she says in her own e-mail in her own words, "I've got people not showing up for court, I've got immigration lawyers telling me what are the

procedures." She's struggling to do what a judge can do, a state court misdemeanor judge, not a federal judge used to ICE warrants. She has no corrupt intent, and there's no actual obstruction.

She doesn't tell Mr. Ruiz to run across the street in the rain. She doesn't tell the car to come to a stop. She doesn't do any of that. She's responsible for her courtroom on the Sixth Floor. And those agents made a decision not to arrest because she sent them to the chief judge's chambers like she was told to do. That fact is not going to change.

Just as the Government's going to say all of this pieces together to show she's guilty of two federal offenses, we will say otherwise. This judge is not guilty. Thank you.

* * * * *

(At 4:55 p.m. the hearing ended.)

C E R T I F I C A T E

I, JENNIFER L. STAKE, RDR, CRR, an Official Court Reporter for the United States District Court for the Eastern District of Wisconsin, do hereby certify that the foregoing is a true and correct transcript of the excerpt of proceedings had in the above-titled matter as the same are contained in my original machine shorthand notes on the said trial or proceeding.

Dated this 16th day of December, 2025.

Milwaukee, Wisconsin.

Jennifer L. Stake, RDR, CRR
United States Official Court Reporter
517 East Wisconsin Avenue, Room 324
Milwaukee, WI   53202

Jennifer_Stake@wied.uscourts.gov

ELECTRONICALLY SIGNED BY JENNIFER L. STAKE
Official Court Reporter, RDR, CRR
_____